NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SCOTT DAVID BAGLEY,**

        **Plaintiff,**

v.                                                          **Case No. 6:18-cv-25-Orl-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Scott David Bagley, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 13, and the parties' Joint Memorandum, Doc. No. 18.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 14. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4. Counsel for the Commissioner objects that counsel for Plaintiff included in the agreed statement of facts information that predates the alleged disability period. However, because counsel for Plaintiff referred to this earlier evidence in argument, and the ALJ cited to some of it in her decision, the objection is not well taken.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2013, Bagley filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* He alleged that he became disabled on September 20, 2013. R. 206, 211.[2]

After his applications were denied originally and on reconsideration, Bagley asked for a hearing before an Administrative Law Judge ("ALJ"). R. 205. An ALJ held a hearing on November 15, 2016. Bagley, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 30-55.

After considering the hearing testimony and the evidence in the record, the ALJ issued a decision. R. 15-24. The ALJ found that Bagley was insured under OASDI through December 31, 2013. R. 17. The ALJ determined that Bagley had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

The ALJ found that Bagley had the following severe impairments: obesity; lumbar spondylosis; and hypertension. *Id.* The ALJ found that Bagley's heart condition, left shoulder arthritis and diabetes were not severe impairments. R. 18. The ALJ also concluded that Bagley did not have a severe mental impairment. She found that Bagley had mild restrictions in activities of daily living; no difficulty maintaining social functioning; and mild difficulties in maintaining concentration, persistent or pace. *Id.* The ALJ found that Bagley did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. *Id.*

---

[2] Bagley previously filed applications for OASDI and SSI benefits in 2011. R. 59. On September 19, 2013, ALJ Pamela Houston issued a decision finding that Bagley was not disabled. R. 59-70. ALJ Houston also issued the decision currently under review. R. 24.

The ALJ found that Bagley had the residual functional capacity ("RFC") to perform light work, as follows:

> [H]e can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never ladders, ropes, or scaffolds. Avoid: constant pushing and pulling with the upper extremities, work at heights, work with dangerous machinery, constant vibration, and constant temperatures over 90°F and under 40°F. Work tasks should be learned in about 6 months or less.

R. 19. The restriction to work tasks learned in 6 months or less was based on pain that could interfere with concentration and focus. *Id.* In making this RFC assessment, the ALJ found that Bagley's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his allegations concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record. R. 20.

After considering the testimony of a VE, the ALJ found that Bagley could perform his previous work as a security guard and a detective. R. 23. The ALJ determined that these and other jobs were past relevant work because "[o]fficial wage records maintained by the Agency show that the work was performed within the past 15 years at greater than substantial gainful activity levels." *Id.* (citing Exhibits B8D and B10D). Therefore, the ALJ concluded that Bagley was not disabled. *Id.*

Bagley requested review of the ALJ's decision by the Appeals Council. R. 204. On November 8, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Bagley now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Bagley having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42

U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the ALJ's decision and the Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Bagley's privacy to the extent possible.

Bagley was born in 1961. R. 206. He graduated from high school and attended some college courses. R. 38. Among his previous jobs, Bagley worked at Loews Hotels at Universal, first in security and then in the engineering department as the head carpenter. R. 40. He also worked in loss prevention for Loews Hotels. R. 42. Bagley also worked for U.S. Alliance Services Corp. in security and loss prevention on and off for over a year. He described his job at U.S. Alliance Services as a store detective. R. 41.[3] The VE classified Bagley's work in security as a Guard, Security, DOT number 372.667-034, a light exertional job. R. 46. The VE classified Bagley's work as a store detective as Detective I, DOT number 376.367-014, also a light exertional job. R. 47.

---

[3] Work history reports reflect that Bagley worked at Loews Hotels at Universal and at U.S. Alliance Services Corp. in 1999. He earned $11,560.29 at Loews and $8,227.50 at Alliance. R. 226-27. He also worked at Loews in 2000, 2001, 2202, 2003 and 2004, earning $19,253.20, $18,594.26, $24,344.84, and $24,454.62 respectively in those years. R. 227.

4

NOT FOR PUBLICATION

During the ALJ's hearing, Bagley testified that he was 5'8" tall and recently weighed 300 pounds.  R. 36.  He suffered from arterial spasms that would cause his heart to race if he overheated.  R. 32-33.  He could not afford ongoing treatment by a cardiologist.  R. 45. Medication had improved this condition, but he still had to take time to perform tasks, such as vacuuming.  R. 33-34.  He also had diabetes, which caused his feet and legs to swell.  Bagley testified that he spent 80% of his days sitting in a recliner with his feet elevated watching television, sleeping or reading.  R. 34-36.

Bagley also reported arthritis in his lower spine that caused pain after sitting 15 to 20 minutes.  After sitting for that period of time, he would change positions.  He could not bend over because it irritated his back.  R. 35, 38.  He also had difficulty standing for more than 15 minutes due to pain in his knees and back.  R. 36.  Bagley indicated that after surgeries on his left shoulder, he was told to avoid raising his arm above his head for prolonged periods of time.  R. 37.  He took Oxycontin every 12 hours for pain.  The medication made his pain tolerable, but he was a little groggy.  *Id.*

Bagley was able to drive.  R. 43.  He also used social media on a computer.  He could make himself a meal and do his laundry.  He would occasionally grocery shop with his father.  R. 43-44.

Bagley's father completed two function reports in 2014.  He wrote that Bagley could not stand or sit for long or walk any distance.  Bagley's father estimated that Bagley could walk 1/4 of a block and then would need to rest for 1 hour before he could resume walking.  Bagley stayed in bed most of the time due to pain and illness.  Bagley watched television all day.  R. 261-68, 291-98.

Thomas D. Harris, M.D., treated Bagley beginning in July 2006 for complaints of chest discomfort, fatigue and dyspnea. R. 383. The initial treatment note reflects Bagley's surgical history, including bilateral knee arthroscopies and left knee surgical repair, left elbow ulnar nerve release, right carpal tunnel repair, and left rotator cuff repair. He also suffered from type II diabetes mellitus and possible vasospastic angina. *Id.* An electrocardiogram revealed sinus rhythm, left axis deviation, and right bundle branch block. Dr. Harris ordered further testing. R. 384-85. No arrhythmias were identified in a stress test and no chest pain was reported. R. 390. An echocardiogram showed mild mitral valve and tricuspid regurgitation with mild pulmonary hypertension. R. 393.

On August 14, 2006, Bagley met with APRN Elizabeth J. Remo to review test results. APRN Remo's impressions included mixed dyslipidemia and hypertriglyceridemia, myalgias probably secondary to Lipitor, which medication was canceled for two weeks, and a significant family history of coronary artery disease and cerebrovascular accident. APRN Remo prescribed aggressive lipid lowering diet therapy, an exercise regimen and medications. R. 387.

There are no further treatment records from Dr. Harris until February 2012. At that time, Bagley told Dr. Harris that his current medications were working well, and he had no side effects. He rated his pain as 3 on a 10-point pain scale ("3/10"). He reported that his back hurt more, making it harder to sit. He experienced numbness in his legs, toes and feet. R. 409-10.

In May 2012, Dr. Harris wrote that Bagley had "a list of just about head to toe complaints which comprise many organ systems." R. 407. These included flaring of back pain as well as hip, back and shoulder pain that interfered with his sleep. He was lethargic, and he did not exercise. Dr. Harris ordered a physical therapy evaluation and treatment. Bagley refused a

referral to a cardiologist, neurologist and pulmonary specialist, and he refused lab work. *Id.* Dr. Harris signed a functional capacity assessment form, apparently at Bagley's request, but he wrote that his opinion on the form "is NOT with medical certainty since I did NOT run him through the full physical therapy eval he needs for this [i.e. i did not measure squatting and climbing or amount that he could life. patient said he can honestly estimate these]." *Id.*

In August 2012, Bagley complained of pinched nerve pain in both hips radiating down to his toes with numbness and tingling. He had run out of anti-inflammatory pain medication. He rated his pain level as 3/10. Dr. Harris again recommended exercise and dietary changes. Bagley's medication list included Oxycodone and Neurontin. R. 405-06.

In February 2013, Bagley told Dr. Harris that his pain was not controlled with medication, and he rated his pain as 3/10. Bagley reported that he was not exercising and that he had knee pain. R. 403-04.

In May 2013, Bagley reported that his pain had been controlled with medication, and he rated his pain level at 3/10. Bagley's blood sugar was controlled and normal. Dr. Harris recommend diet and exercise as lifestyle changes. R. 401-02.

In August 2013, Bagley continued to complain of heart problems resulting in strong left-sided chest pain radiating to his left arm and fatigue. R. 399. Dr. Harris's assessment included chronic pain syndrome; diabetes mellitus type II; hyperlipidemia and hypertriglyceridemia; obesity; peripheral neuropathy; labile or transient hypertension; and fatigue. *Id.* Dr. Harris continued Bagley on Norco (hydrocodone-acetaminophen) as needed for pain and stressed the need for exercise and a diet low in carbohydrates. R. 399-400.

NOT FOR PUBLICATION

The first medical record after the alleged disability onset date in this case is from November 2013. The record indicates that Bagley told Dr. Harris that he did not have chest discomfort or dyspnea on exertion at that time. He reported that his anxiety was worse but that current medications were working well. He stated that his pain was controlled with medication, rating his pain at 3/10, which was tolerable. Dr. Harris discussed stress reduction techniques and told Bagley to write down his blood pressure levels. Bagley was instructed on specific dietary changes and advised to regularly exercise. R. 411-12.

On February 2, 2014, Bagley complained to Dr. Harris of fatigue, but he had no chest discomfort or dyspnea on exertion. Bagley's blood sugars and blood pressure were controlled. Dr. Harris diagnosed a viral infection that did not require antibiotics. R. 446-47. On February 25, 2014, Dr. Harris completed a questionnaire in which he indicated that Bagley was not capable of sustaining work activity for 8 hours a day, 5 days a week because of pain. R. 435.

Martha Pollack, M.D., a board-certified internist, examined Bagley on March 28, 2014 at the request of the Office of Disability Determinations. Bagley complained of a heart condition; arthritis in his back, knees, elbows and fingers; shortness of breath; diabetes; and depression. He denied chest pain. He reported that he performed light housework and other activities of daily living, but he avoided working outside due to heart spasms. He stated that he overheated easily and that if he worked outside in the heat he felt weak, dizzy and had to stop and sit down. Due to pain, he had difficulty sitting, standing or walking for more than 1 hour at a time. He also indicated that he was diabetic and that he had some numbness and tingling in his hands and feet. R. 436.

Upon examination, Dr. Pollack observed that Bagley had no difficulty getting on and off the examination table or getting out of a chair. He had mild difficulty heel and toe walking, and

mild difficulty squatting. A straight-leg raising test was negative for pain, and no paravertebral muscle spasms were noted. R. 437. Motor strength was 5/5, and sensation was intact. Range of motion was normal except for a slight reduction in flexion and extension of the cervical spine and flexion of the dorsolumbar spine. R. 437-39. The cardiac examination was unremarkable. Dr. Pollack found no evidence of active joint swelling or effusions. Bagley's digital dexterity and grip strength in his hands was preserved. R. 439.

Bagley returned to Dr. Harris in May 2014. He complained of fatigue. He reported that his blood pressure had been controlled and that current medications were working well. He stated that he could not exercise because his heart rate went too high. He did not, however, have palpitations, chest pain or discomfort, or dyspnea on exertion. Dr. Harris prescribed a low-carbohydrate diet and exercise. R. 444-45.

In August 2014, Bagley told Dr. Harris that he was tired and sleepy all the time. He complained of some intermittent left-sided chest pain that was not radiating at a level of 5/10. Dr. Harris again recommended well planned, regular exercise 3 to 5 times a week and weight loss. R. 463-64.

In October 2014, Bagley reported that the pharmacy would not refill his pain medication. On October 20, 2014, Dr. Harris wrote a prescription for extended release Oxycontin. R. 461-62.

In January 2015, Bagley told Dr. Harris that OxyContin caused diarrhea and cramps and that his restless leg syndrome had returned. His pain was controlled with medication at a level of 3/10. His blood sugar was also controlled and normal. Dr. Harris continued to recommend exercise and diet. R. 459-60.

In May 2015, Bagley told Dr. Harris that he was lethargic. He did not have insurance and could not afford lab work. Bagley requested an increase in his pain medication. Dr. Harris's physical examination was normal. R. 457-58.

On July 31, 2015, Bagley reported that OxyContin barely covered his pain. He had been eating more but he reported getting exercise. He had gained 13 pounds in less than 3 months. Dr. Harris's assessment included morbid obesity. R. 455-56.

Dr. Harris completed a functional capacity assessment form on September 15, 2016. He noted that there was no objective evidence/diagnosis to support his opinions and that the opinions were based only on "patient report." R. 465-66.

During the ALJ's hearing, the VE classified Bagley's previous work as a security guard and as a detective as light exertional work. R. 46-47. The ALJ asked the VE to assume a person who could perform light work with the RFC the ALJ assigned to Bagley. R. 49. The VE testified that this hypothetical person could perform the jobs of Security Guard and Detective I. If the person had to sit up to 2 hours a day, the VE testified that the person could not perform these jobs. However, the person could perform the light, unskilled (SVP 2) jobs of ticket taker, ticket seller, and information clerk, all of which existed in the national economy. R. 50. If the person would be off task more than 10% of the time, the VE testified that there would be no jobs the person could perform. *Id.* If the person could not work outside, the person could still work as a detective. R. 53.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, counsel for Bagley asserts seven assignments of error, some of which are interrelated. I will address these issues.

NOT FOR PUBLICATION

*Failure to Include a Heart Condition as a Severe Impairment*.

In one assignment of error, counsel for Bagley contends that the ALJ erred by failing to find that Bagley's heart condition was a severe impairment. Doc. No. 18, at 24-29. Counsel contends that because the ALJ included "status-post coronary artery disease and stent placement" as a severe impairment in her September 19, 2013 decision, she erred by failing to include this condition in the January 5, 2017 decision.

First, an ALJ does not err by failing to find a specific impairment to be severe at step two of the sequential evaluation, so long as the ALJ finds at least one severe impairment and continues the sequential analysis. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). In the decision under review, the ALJ found that Bagley had three severe impairments. R. 17. The ALJ then completed the sequential evaluation through the remaining steps, including discussing Bagley's complaints of a heart condition and the medical records regarding testing of this condition. *See, e.g.*, R. 20.

Second, in the September 2013 decision, the ALJ cited "a remote history of cardiac catheterization and stent placement." R. 64. The record reflects that the cardiac catheterization was performed in 2001, which was well before the current period of disability. R. 383. During the disability period currently at issue, Dr. Pollack's cardiac examination was unremarkable. The records also reflect that Bagley consistently reported that he did not have chest discomfort or dyspnea on exertion. His blood pressure was controlled. Despite his complaints of his heart rate going too high when he exercised, Dr. Harris repeatedly instructed to Bagley to engage in regular exercise. Therefore, the record does not contain substantial evidence supporting a finding that Bagley had a severe heart condition on and after September 30, 2013.

For these reasons, I recommend that the Court find that this assignment of error is not well taken.

*Failure to Follow the Special Technique for Assessing Mental Impairments.*

Counsel for Bagley also asserts that the ALJ erred by failing to follow the special technique that must be used in assessing mental impairments. Doc. No. 18, at 19-20. Agency regulations require the ALJ to use the special technique contained in a Psychiatric Review Technique Form ("PRTF") for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. On January 5, 2017, when the decision under review was written, this technique required "separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.' The ALJ is required to incorporate the results of this technique into the findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005) (citations omitted).

In this case, the ALJ made the required findings regarding Bagley's activities of daily living, social functioning, and concentration, persistence or pace. R. 18. The ALJ concluded that Bagley had mild limitations in activities of daily living as a result of pain rather than psychiatric symptoms. The ALJ found that Bagley had mild difficulties maintaining concentration, persistence or pace due to his complaints of grogginess and difficulty thinking as side effects of medication. The ALJ found no limitations in social functioning. *Id.* While counsel for Bagley contends that the ALJ's findings were conclusory, counsel does not point to any evidence in the record undermining those findings or cite any legal authority supporting this argument. Doc. No. 18, at 20.

The ALJ did not make the required finding regarding episodes of decompensation. Counsel for Bagley did not specifically argue that this failure is reversible error. The ALJ gave great weight to the opinion of Angeles Alvarez-Mullin, M.D., a reviewing physician, who found that Bagley had no episodes of decompensation. R. 22 (citing R. 92-93). The record does not contain any evidence of decompensation. Therefore, any error in failing to address this functional area is harmless.

For these reasons, I recommend that the Court find that this assignment of error is unavailing.

*September 16, 2016 Functional Capacity Assessment*.

Counsel for Bagley contends that the ALJ erred by failing to specifically address Dr. Harris's opinion in his September 16, 2016 functional capacity evaluation ("FCE") that Bagley would be off task more than 60% of a work day. Counsel argues that the ALJ did not clearly articulate the reasons for giving little weight to this opinion from a treating physician. Doc. No. 18, at 16-17.

The ALJ specifically discussed the September 16, 2016 FCE. R. 21-22. She expressly gave little weight to the limitations therein "because by Dr. Harris's own admission the limitations are not based on any objective evidence; rather, they are based on claimant's report." R. 22. This finding is supported by the FCE itself. As discussed in the summary of facts above, Dr. Harris wrote that there was no objective evidence/diagnosis to support his opinions and that the opinions were based only on "patient report." R. 465-66.[4] When, as here, a treating physician's opinion is

---

[4] Notably, completing the form based on Bagley's subjective report was consistent with Dr. Harris's statement in a May 2012 treatment note that his opinion on a form "is NOT with medical certainty since I did NOT run him through the full physical therapy eval he needs for this [i.e. i did not measure squatting

not consistent with his treatment notes or the record as a whole, good cause exists to give little weight to that opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

As for the ALJ's failure to specifically recite that Dr. Harris checked a box on the FCE indicating that Harris would be off work tasks more than 60% of the time, R. 466, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is 'not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (1995)).

Because there is no indication on the FCE form that Dr. Harris had any objective findings or diagnoses supporting the off-task opinion, the same rationale the ALJ used to give little weight to other portions of the FCE applies to this opinion as well.

For these reasons, I recommend that the Court find that this assignment of error is not meritorious.

*Residual Functional Capacity.*

Counsel for Bagley asserts that the ALJ erred in determining Bagley's RFC because the RFC did not include a sit/stand option; a limitation to simple tasks that can be learned within 30 days of training; and avoidance of concentrated exposure to dust, fumes, odors, gases and poorly ventilated environments. Counsel contends that these limitations were required because the ALJ included them in the RFC in her September 19, 2013 decision. More specifically, counsel argues that because the ALJ did not find that Bagley's condition had medically improved after September

---

and climbing or amount that he could life. patient said he can honestly estimate these]." R. 407.

NOT FOR PUBLICATION

19, 2013, she was required to adopt the RFC findings from her earlier decision. Doc. No. 18, at 29-30. However, counsel does not cite any legal authority supporting that argument.[5]

The Eleventh Circuit has held that an ALJ properly declines to give *res judicata* effect to a prior decision that adjudicated a different time period and which, therefore, did not finally adjudicate any issues or facts raised in the later proceeding. *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 844 (11th Cir. 2014); *Moreno v. Astrue*, 366 F. App'x 23, 27 (11th Cir. 2010).[6] In the September 19, 2013 decision, the ALJ addressed Bagley's claim that he was disabled from July 19, 2011 through the date of the decision. The decision currently under review addresses Bagley's claim that he was disabled starting on September 20, 2013 and thereafter. Thus, the earlier decision did not address the same time period as the decision currently under review, and nothing in the ALJ's September 19, 2013 decision reached any binding conclusion on the current period of disability.

Accordingly, I recommend that the Court find that this assignment of error is unavailing.

*Past Relevant Work.*

In the remaining assignments of error, counsel for Bagley contends that the ALJ erred in finding that he could perform past relevant work ("PRW") as a security guard and detective. He submits, first, that these jobs did not qualify as PRW because the jobs were not performed within the time frame necessary to qualify as PRW. He argues that the ALJ is barred from concluding

---

[5] I note that the "medical improvement" standard applies when a claimant has been found to be disabled and his disability is later terminated due to medical improvement related to his ability to work. 42 U.S.C. § 423(f). The medical improvement standard is not applicable in this case because Bagley has never been found by the SSA to be disabled.

[6] I cite unpublished decisions of the Eleventh Circuit as persuasive authority.

15

that Bagley could perform PRW because, in the September 19, 2013 decision, she concluded that Bagley could not perform any of his PRW. Finally, he contends that substantial evidence does not support the conclusion that Bagley could perform these jobs with the RFC assigned by the ALJ in the decision under review. Doc. No. 18, at 8-9, 13-14, 30-31. I will address these arguments in turn.

### Definition of PRW.

At step four of the sequential evaluation, an ALJ considers whether a claimant's impairments prevent him from doing PRW. 20 C.F.R. §§ 404.1520(e), 416.920(e). Prior work experience is relevant "when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies." 20 C.F.R. §§ 404.1565(a); 416.965(a). The relevant time period for Bagley's OASDI claim is from 1998 through 2013, which is the 15 years prior to the date he was last insured (December 31, 2013). For the SSI claim, the relevant time period is 2002 through 2017, which includes the 15 years before the ALJ issued her decision on January 5, 2017.

Bagley testified that he worked in security and loss prevention for Loews Hotels at Universal and for U.S. Alliance Services. In written reports, he stated that he worked in loss prevention and security for U.S. Alliance Services from February 1999 through April 2000, which is within the 15-year lookback period for his OASDI claim. R. 272. Notably, counsel for Bagley does not argue that Bagley did not perform these jobs long enough to learn them or that the money he earned did not satisfy the substantial gainful activity requirement. Therefore, the argument that

16

the jobs of Guard, Security and Detective I were not PRW for purposes of Bagley's OASDI claim is not supported by the record.

As for the SSI claim, Bagley stated that when he started working for Loews Hotels, he worked the first year as a security guard. R. 42, 278. The earnings records reflect that Bagley worked for Loews Hotels from 1999 through 2004. R. 232. Therefore, Bagley's security and loss prevention work at Loews Hotels in 1999 and his work at U.S. Alliance Services in 1999 and 2000 may predate the 15-year lookback period for his SSI claim. However, in certain circumstances, an ALJ may consider work performed outside the 15-year lookback period. SSR 82-62, 1982 WL 31386, at *2 (SSA 1982) (stating that, "in some cases work performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations").

Even if the ALJ erred in determining whether the jobs of security guard and detective were PRW for the SSI claim, I note that the ALJ continued the sequential analysis through step five by asking the VE if there were other jobs in the national economy that Bagley could perform. The VE identified three light, unskilled jobs available in the national economy that Bagley could perform: ticket taker; ticket seller; and information clerk. Under these circumstances, any error in the determination of Bagley's PRW for purposes of his SSI claim appears to be harmless because remand to reconsider the PRW finding would not change the outcome based on the evidence that there were other jobs available in the national economy that Bagley could perform. The "harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome . . . such error is deemed harmless." *Torres v. Astrue*, No. 1:11-CV-24 (WLS), 2012 WL 621707, at *2 (M.D. Ga. Feb. 2, 2012) (citations omitted).

NOT FOR PUBLICATION

### Ability to Perform PRW.

Alternatively, counsel for Bagley contends that the ALJ erred in finding that Bagley could perform PRW because she concluded in the September 19, 2013 decision that Bagley could not perform any of his PRW, including the job of security guard (R. 68). Doc. No. 18, at 30-31. As discussed above, because the September 19, 2013 decision adjudicated a different alleged period of disability and did not finally adjudicate any issues or facts raised in the current case, the ALJ properly declined to give *res judicata* effect to the prior decision. *Griffin*, 560 F. App'x at 844; *Moreno*, 366 F. App'x at 27.

Counsel for Bagley also contends that the ALJ erred by finding that Bagley could perform PRW because the jobs of security guard and detective were precluded by the environmental limitations in the RFC and by the ALJ's statement that anxiety and pain can interfere with concentration and focus. Doc. No. 18, at 9.

As to environmental limitations, the ALJ included in the RFC a limitation to avoid work under constant temperatures over 90°F and under 40°F. She included this limitation in the hypothetical questions to the VE, and the VE testified that with this limitation the hypothetical person could perform the jobs of Guard, Security and Detective I. Counsel for Bagley argues that both of these jobs required frequent exposure to weather and occasional exposure to environmental conditions. *Id.* However, a Detailed Job Specialty Report in the record reflects that exposure to extreme cold and extreme heat is not present in these jobs, R. 348, which undercuts the argument that these jobs require work under constant temperatures over 90°F and under 40°F. Therefore, this argument fails.

As to concentration and focus, the ALJ stated that she incorporated limitations in these abilities in the RFC by including a restriction to work tasks learned in 6 months or less. R 19. There was no independent limitation in the RFC to low-stress jobs. Therefore, the argument that the RFC precludes Bagley from performing the jobs of Guard, Security and Detective I because they may cause stress is not well taken.[7]

For these reasons, I recommend that the Court find that these final three assignments of error do not warrant reversal of the ALJ's decision.

## RECOMMENDATIONS.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

## Notice.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**Respectfully Recommended** this 13th day of November 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[7] To the extent that this argument is based on Bagley's testimony that he cannot tolerate stress, the ALJ found that his statements were not entirely consistent with the record. R. 20. Bagley did not challenge this credibility finding in the Joint Memorandum.